The final case being argued today is the State University of New York v. Triple O, et al. We have two appellees on submission, and we have Ms. Jaffrey for the appellants, and you can begin whenever you're ready. Thank you, your honors. Good morning. May it please the court, my name is Farva Jaffrey, counsel for appellants. I'm here before you today to appeal the district court's denial of appellants' motion to vacate default judgment. This court should find that the district court erred and reverse the district court's decision and remand for further proceedings. Triple O's actions were not willful, and the motion to vacate should have been granted by the district court. The district court didn't take into full consideration the letter that was provided by the defendants, and the court ignored the well-settled principle that courts should try things on the merits rather than to enter a default judgment against defendants. A motion to vacate a default judgment should be made within a reasonable period of time pursuant to Federal Rules of Procedure 60C1. In this case, the complaint was filed on November 8th, 2019. COVID ensued in March 2020, and plaintiffs and defendants filed a motion to vacate default judgment just a year later after they retained new counsel when they realized that the counsel they originally hired was not appearing for them. The Second Circuit has been exceedingly lenient in defining the term reasonable time with respect to challenges such as this. In fact, it's been off-stated that for all intents and purposes, a motion to vacate a default judgment as void may be made at any time. If the motion to vacate, Mr. Scott asserts that in December 2019 he met an attorney who agreed to represent him, but had submitted a handwritten note to the court later than that in December 2019, in January 2020, that he needed additional time to seek appropriate legal representation. Why isn't the district judge permitted to say, I'm not buying that he had this attorney in place? Sure. Judge, I think that a judge is permitted to do that, but I don't think that the judge did full diligence in that case. So I think we stated in our briefs at the lower court level that the defendant, Mr. Scott, he actually went into the courthouse, was on the phone with his attorney at the time, who he had known for several years and helped him handle other matters. And that attorney actually told him to write that letter. So Mr. Scott and his co-defendants, they're not experienced in the civil litigation system. They're just taking the words of their counsel. They're not some kind of sophisticated entity. I'm sorry, go ahead. So you're saying even if it's a flat contradiction between two things that someone submitted to the court, that they have some obligation to do some further investigation about why that is? It's an abuse of discretion of whether or not to have a hearing on something like that. Right, but Your Honor, I think in that case- You're suggesting that the judge, in every situation, had to make sure that someone didn't tell the person to write the note and they didn't really mean the note. I mean, that's kind of a pretty high burden, right? No, I don't think it's that high of a burden, Your Honor. Did you request an evidentiary hearing on this letter? No, I didn't, Your Honor. Okay, so you didn't request an evidentiary hearing and we have a standard of abuse of discretion. Correct. So why isn't the letter that had its contradiction enough to fall within the abuse of discretion? Your Honor, I think that the letter was not really indicative of anything. I think that the letter just shows that he knew that there was a lawsuit that was pending and- He said that he was looking for counsel. I understand, Your Honor, but I don't think that that was actually the case. I think this was a confused litigant who's never been involved with the civil litigation system, who had experience with an attorney on the criminal side. But if there was no evidentiary hearing requested, how was the judge supposed to know that? Well, Judge, I believe that they could have issued an interim order or they could have called- asked for a hearing to have the parties present and to have oral argument to clarify some of the issues. I didn't think- Personally, I didn't think that there was- as to, you know, have the judge rely on it and say, you know, this case is totally done. We've filed a motion to vacate default judgment within a reasonable period of time during a pandemic when there was no vaccines or anything and courts were closed. And, you know, my clients did the right thing by retaining new counsel once they realized that their previous counsel was just not going to be appearing. It was their diligence. In August of 2020, the attorney's not communicating with your clients. And yet, it was months that went by before there was even a motion to vacate. Certainly, by August 2020, they know this lawyer, you know, assuming there was a problem, was gone, right? No, Your Honor. He was communicating with- my clients were communicating with this lawyer during this period of time. That's the issue. No, but in August 2020, he said that those communications ceased. Correct. Correct. And it wasn't until November 14th that someone filed a notice of appearance and so on, too. So- Sure. That's not particularly diligent in this type of situation, right? Your Honor, I would think three months is actually- given that it was COVID times, I think that that was perfectly fine to find a new lawyer who, you know, you don't have any experience with. You don't have any experience with the legal system. And you get a notice of default, and you're in jail. The meritorious defense. I'm having a hard time understanding. Before the district court, there was some effort, I guess, to say that UA could be University of Alabama as opposed to University of Albany. But they alleged, you know, well over a dozen different infringements. That was just like one aspect of their claim. And they said there was UA in combination with other things that made clear, in addition to geography, that it was University of Albany. So what was the defense that was presented to the district court regarding all the different infringements? I didn't see anything on the other complaints. Right, but, Your Honor, they're all of the same kind. You don't have to have a perfect defense in a motion to vacate a default judgment. You just have to have something feasible. In this case, there was a couple of pieces of evidence that were entered as part of the complaint, which was a few flyers. It was about uses of the colors purple and gold and the acronym UA. Your Honor, I think that, you know, this is very- I think they have said, to the contrary, that you need to show that you would have a complete defense to all the charges. And there were multiple trademark infringements charged here. These folks were running a business. They were running a business, Your Honor. And they're on notice. No, I agree, Your Honor. They were definitely running a business. But I don't think that there was a material difference to all these different causes of action that were brought. I think the same sort of defense would be brought whether or not you were talking about one cause of action versus another. No, there is a material difference. When they say that your clients were using UA in combination of all different things associated with SUNY, including SUNY itself, SUNY, you know, the acronym SUNY. And the defense is, well, UA could mean University of Alabama. That hardly sounds like a defense to allegations that they were using all these different indicia of SUNY in their advertisements. And I looked at one after the cease and desist order where it refers to UA homecoming party. It has a football jersey from the University of Albany in the picture. So it's not just about UA, right? No, I understand your point, Your Honor. But I would ask the court to please look at the First Circuit case, Boston Athletic Association versus Sullivan, in which there was a clear distinction that that court had drawn. So, for example, in that case, the court stated that if there was a, you know, Boston Marathon t-shirts being sold at the Boston Marathon, there's a link that's created in, you know, the end user's mind that, okay, this must be sold by the Boston Marathon because it's at the Boston Marathon. In this case, these flyers. But weren't there fights and complaints, anyway, that erupted and were commented on in the press, reported in the press, as if SUNY had, in fact, sponsored these events? You know, SUNY homecoming events and so on that turned into kind of, they were raves. They were kind of crazy parties. Your Honor, I think there's. They were attributed by outsiders. But, Your Honor, I think that in those articles, it did say that this was a Triple O event. I think that they did distinguish that in these press articles. They didn't say that these are necessarily SUNY-sponsored events. They said that they were. They did mention Triple O. They asked James Scott for comment. They didn't go to the general counsel of SUNY and ask for comment. They asked my defendant for comment here. I don't see how you can look at a flyer with women who have their breasts hanging out, you know, with these gaudy colors and pictures of boom boxes and expensive cars and say that's a SUNY event. In fact, Your Honor, I wanted to bring actually something to the court's attention here. These kinds of flyers happen with all sorts of different companies. I just pulled these last night from the Yahoo Boys, from the 549ers, from TNT, from all sorts of different organizations that are not affiliated with SUNY that all have the same kinds of flyers. As you can see, the same women using the UA logo here. And SUNY's not bringing any lawsuits against these companies. That's why I'm asking for the court to please vacate, to please reverse the decision of the district court and allow my clients to at least be able to contest a permanent injunction, which is a total mark on their futures. They are young African American men. What is the best evidence in the record? Where can we look to demonstrate that your clients have been diligent in responding to the cease and It seems that SUNY alleges at least that they were told that your clients told them they were going to take the material down and they did not. And then we have the evidence of the kind that Judge Bianco is pointing to, that they maybe spoke with a lawyer, but then really didn't follow up for periods of months. When they were engaged in legal action that they had been advised was infringing SUNY's trademark. Why here should we not impute any negligence of the attorney to your clients? Your Honor, but that's all it is. It's negligence. It's not willfulness. It's not bad faith. It's not intentional. It's not deliberate. I think there's a case that I'm drawing a blank on right now that draws that distinction. Sure, my clients could have been negligent. Sure, the lawyer was probably negligent. But it doesn't mean that- I think they have to show that they were diligent in order not to have the negligence or worse of their attorney ascribed to them. Sure. But, Your Honor, I think they were diligent. As soon as they found out the attorney was not really on this case, they called another lawyer. Are you seeking sanctions against that other attorney? I'm sorry? Are you seeking sanctions against that other attorney? There's no active case to seek sanctions against them. Why didn't you introduce any evidence of a retainer agreement or text messages or anything suggesting that there was actually consistency? Well, we provided his name, Your Honor, but we didn't provide anything related to text messages because we felt that those were privileged and we didn't want to produce those. We also didn't provide an engagement letter because this attorney has never given this client an engagement letter, and he's worked with him in the past as well. All right. Thank you. Thank you. We'll reserve decision. That completes the business of the court today. The last case is on submission, so with thanks to our deputy, Ms. Beard, I'll ask that she adjourn court. Court is adjourned.